Morning, Your Honors. David Rosenfeld on behalf of SEIU, UnitedHealthcare West. I'd like to reserve three minutes for rebuttal. The dispositive procedural issue in this case arises out of the fact that the employer waited until after McKay had liquidated the precise amount of damages. It's our position that the employer had to file any challenge to the initial merits award within the statutory period. In preparation for argument, I went back and looked, and I can find five Supreme Court cases since the Steelworkers Trilogy in 1959 where employers have challenged arbitration awards. There's Enterprise Wheeling Car. There's a case called Rissen Company, which was a board of arbitration decision. There's W.R. Grace v. Rubberworkers. There's Paperworkers v. MISCO. And finally, Eastern Associated Coal v. Mineworkers, each of which are in exactly this position where the arbitrator or arbitrators in those cases had issued awards reinstating people without specifying anything more than that the workers who had been wrongfully terminated would receive back pay, that is, damages. If one looks at the cases in this Court … And in all those cases, you're saying that the Court accepted jurisdiction. Exactly. Okay. Do you have any case in which we have this situation in which somebody waits until the award becomes final, which the Court said, no, you've waited too long? No. Okay. So the presence of one, and that is the Court's generosity in accepting jurisdiction, doesn't necessarily prove the contrary, that is, that you can't wait. No, but given the Supreme Court's concern about its own jurisdiction, one would think that someone would have raised that because it has been raised in other cases in terms of the timeliness of petitions, for example, in the Wells exterior trim case. But it also illustrates what is really the practice that the Court was recognizing, that these proceedings are always sort of bifurcated, that is, the arbitrator decides the merits of the case and orders a remedy. In each of those cases, the arbitrator ordered a remedy. You go back, for example, to this Court's recent decision in Aramark, Service Employees Aramark, the case involving the immigration issues, that's the same thing. The arbitrator in that case found a violation and ordered the workers reinstated with back pay. That's all he said. That was sufficient to create a final award, which this Court had no trouble affirming without questioning its jurisdiction. And that's because the practice in the labor relations community in this circuit and every other circuit is that once the arbitrator issues a decision ordering reinstatement or some other similar remedy and damages in some fashion, the parties always consider that to be final, and the employer who wants to resist challenges it or the union challenges it within the appropriate statute of limitations. You don't wait until after the parties then sit down and try to liquidate the precise amount of damages. But it's a little bit different, isn't it, counsel, when they reinstate with back pay and then we have a back pay proceeding afterwards, it's unknown what the amount is going to be because you have so many employees, you know what they earned. The only defense is were they working on the outside during this time so that that should mitigate against the back pay award. Here the determination was this is an appropriate bargaining unit for the arbitrator and the union is entitled to attorney's fees. We don't have any idea what that would be. So maybe the employer is in the position of saying, well, let's see, if that's not really going to be too much of a bite, we can live with it. It might not appeal. But that's in fact the hospital's position here, that a back pay damage award is more ascertainable than the damage award here. But remember that there are two points. One is that Arbitrator McKay was very specific or relatively specific about the damages because he said it would be wages, benefits and costs that the union incurred and their attorney's fees in a limited portion of the proceeding before the board. But you're right, Your Honor, it's the bite problem here. That is, it looked like the hospital didn't care about the bite here. They were willing to go through the whole rest of the proceeding and only when it appears the bite got too big did they decide to challenge it. But jurisdiction and finality of awards can't depend upon the ultimate bite. It has to have some finality so that parties in labor relations of which there are arbitration decisions every day know when they can challenge. And I finally agree. So why isn't it a salutary rule to wait until all the proceedings are completed? Because that would then put everybody in a very difficult position where an arbitrator says reinstate somebody or reinstate people or take some action and pay damages, then the union could not go to court to seek compliance with the finality of that order that the employer take some action. And that's why you... Well, of course, this is before an arbitrator. It seems that you would have some remedies in urging the arbitrator to complete it as quickly as possible so that any challenges could then be dealt with. That would upset, with all due respect, labor relations in this country to have that kind of a process because then you'd be forced to arbitrate the damages aspect of every case to get it resolved quickly on the risk that the employer would say, I'm not going to comply. Let's string this out for another two years while we fight about damages. And I don't think Mr. Scanlon is going to get up here and tell you that his management clients want to spend days and days litigating, in Judge Bay's example, back pay for people when you don't even know if they're going to go back to work or have a second or third day of hearing on back pay just to put in issue the question of the underlying award. And so what Enterprise Wheeling Car and the rest of the cases recognizes is bifurcated. The arbitrator says the remedy is back pay. For example, in the Stead Motors case, the arbitrator ordered Gale Rocks, the mechanic involved in that case, back to work with 120-day suspension, leaving for the second phase back pay. That issue was never litigated because the whole case came to this Court on the question of whether the arbitrator's reinstatement violated public policy. Mr. Rosenfeld, you've suggested that the medical center may have reasons for not wanting to have this thing string out over years while you argue over the damages. But that still doesn't quite answer the question I asked you before, whether all of that and all of the sort of prudential reasons for wanting to go forward with it and the cases that you cited in the Supreme Court where the Supreme Court had permitted it to go through suggests that it is therefore that we are deprived of jurisdiction over this case because a party decided to wait until they had a final damage award from the arbitrator. Well, it all depends on how one interprets the question, the finality of an arbitrator's decision. And I would concede one could adopt a rule that would be more consistent the way Federal courts handle finality for appeals, which is everything in total has to be resolved. But that doesn't work in labor relations, and I think that's clear in Enterprise when the Supreme Court says, look, we're remanding this back to the parties to resolve the back pay that were affirming the award because that is the nature of arbitration in the industrial setting, because there's this continuing relationship, and because otherwise the system doesn't work. And so what I think Wells' exterior trim recognizes is that in the unusual circumstance where the arbitrator says, well, I'm not going to figure out what the remedy is, I'm going to remand it to the parties to figure out the remedy, that isn't final, and I accept that. But I think, Judge Bate, this case falls sort of in a continuum here. You've got Wells, in which the arbitrator says, I don't know what the remedy is, I'm remanding it to the party, no finality. You've got back pay, which can be more complicated. For example, you can get into issues about did the employee mitigate? There are just lots of issues that can be raised. In this case, where the arbitrator does limit the damages, he specifies what they are, and all that's left is to figure out the amount. I'd like to move on to the other issue, which is the issue of whether Judge Conney was correct in finding that this award violated some public policy. I think one has to just remember in short what Arbitrator McKay found. He really found disingenuous, dishonest conduct on the part of the hospital. Counsel, let me ask you about that. As I read the district court's order, the district court said as to those issues that would be covered by the NLRB's determination, right or wrong, whatever is covered by the NLRB determination, those are out. As to anything else that's not covered by that determination, I am remanding to the arbitrator for an assessment of damages. Right. And you have appealed that first part, that is, anything that was the part that was thrown out. Correct. As I read it, the medical center has not appealed the remand to the arbitrator. Right. So the only thing that we have before us is are those damages then that would be covered by the NLRB's decision. In the words of the district court, yes. Okay. So all of the bad acts that might be attributable to the medical center, some of those are still on the table, so to speak, and have been remanded to the arbitrator. So all we really have are the bad acts by the medical center as they relate to those things that were determined by the regional director of the NLRB and the board itself. Correct. Okay. And what Arbitrator McKay said was that you don't need to appeal to the NLRB. Counsel, on the NLRB, did you have the right to take an appeal from the NLRB's decision? We did. And did you decide to do that? I apologize. We had a right to take an appeal from the regional director's decision. To the NLRB. But no. You appealed the board's decision. No. Why not? Because there's no judicial review of board decisions of this nature. There's actually no judicial review at all of board representation decisions either by employers or by unions. The way these cases get to this Court, for example, is after a representation decision and an election is conducted and a union is certified, the employer can test that representation decision by refusing the bargain and it comes to this Court on a refusal to bargain. The Act specifically prohibits review of representation decisions. So we had no way to review what the board did. So the only way then of testing the board's decision is basically for the union or for the employer not to cooperate. What happened here was that the board issued a decision, it was a two-to-one decision, in which the board majority said the problem that they saw was that there was no clear evidence of an agreement as to the unit. And they specifically said had there been a clear evidence of an agreement between the union and the employer, we might have reached a different result and found the unit petitioned for appropriate. And what Arbitrator McKay said was the company reneged on its deal. It worked out a deal. Right. But that finding appears to be in the teeth of the finding by the regional director and affirmed by the board. There are two points here. Let's assume it is in the teeth. What STED, what MISCO, what every case that has faced this issue has said is that an error of law by an arbitrator is not reviewable. What is reviewable is whether the remedy, the remedy in a case like this specifically militates, and that's the phrase in Aramark, MISCO and all the other cases, specifically militates against some public policy or the public policy specifically militates against that award. And here the arbitrator said I'm not going to determine the unit. I'm not going to order a new election. All I'm doing is telling the employer to pay for its reneging on a commitment. What happened? Right. But the commitment is exactly what the board found there wasn't. No. What the board, in a sense, yes. The board, when it looked at the record, said there isn't evidence of, enough evidence of that agreement because what happened was the parties didn't in the initial proceeding clarify exactly what that agreement was. They were stipulating to. Since there wasn't a stipulation, the board's rules applied. The board applied its rules and said you haven't got the right bargaining unit. We'll have to send, we have to send it, we have to send it back. And that may be absolutely wrong, but it is the board's decision. And it distracts me that the process in our country is that the board gets the final say. Now, I regret that you did not have a right to appeal it because I was under the impression that you did have a right to appeal it. So I'm grateful for that clarification. But how do we go around saying, well, it's a shame. Let's have a collateral attack on the board's decision and go over here and talk to an arbitrator. No. So you can get another opinion. The attack is not on the board's decision. The attack is on the employer's reversal of position by arguing to the board. The board's decision is that there was no such reversal. How can that not be an attack on the board's decision? Because the arbitrator in the case says the employer had a good faith obligation, an obligation in this agreement, to cooperate in the process, to act without using the board proceedings to delay that. And what he found was that after the regional director issued his decision, the union points out that there was an agreement. And he said what the employer did that got them in trouble was by specifically saying, oh, no, there was never an agreement among the parties. It never happened. And the arbitrator in the case says that's just contrary to the facts. And those facts are contrary to the board decision. That fact is not contrary to the board decision. The arbitrator's factual finding that the parties had reached an agreement, which he said wasn't done on the record. He understands that. But if they had reached an agreement, the board would not have decided the way the board then could have determined whether this was an appropriate representation unit. The response to that is that what McKay found was that the employer sandbagged the process. I'm going to use his strong words because they represented to the regional director and the board after the regional director's initial decision that there never was an agreement when arbitrator McKay found there was. Is your claim before the arbitrator sort of in the nature of fraud upon the board? Fraud on the board and fraud on the process because. Because a fraud on the court claim is a very different kind of claim. Well, I know my time is up. If a case were tried to you as a trial judge and you sense that an employer had or a party had totally changed its position, for example, in response, totally changed its position of request for admissions or totally changed its position in terms of its testimony, you'd be concerned about that and concerned about whether that that met the obligations of the parties. But here the arbitrator said the obligation of the parties arose from their agreement, the collective bargaining agreement that said in a representation matter where the union is organizing, the employer has an obligation to act in good faith not to interfere with that process and to work with the union. So he found as a contractual matter the employer had violated that contractual commitment. And to a certain extent, that violation can be considered. But to the extent that the NLRB said that there wasn't an agreement between the employer and the union, I don't see how that finding can be attacked to establish damages when the board has said, when the regional director has said that there was no agreement between the employer and the union. Your Honor, if you go back to how you phrased that question, I think you hit the nail on the head, which was that had the what the arbitrator did was find that the board found there was no agreement, at least there was an adequate agreement, only because of the employer's conduct in representing to the board and reneging on its commitment that there was an agreement. In other words, he said that when the union files its motion for reconsideration and points out to the region there was an agreement, he finds explicitly that the employer represented the opposite, said to the board, oh, no, there wasn't an agreement. He said that's false. There wasn't. Did you have an opportunity to make all of those arguments before the board? Yes. Okay. Not we didn't have the we only had the chance to make the argument. Well, sort of in a sense, no, because we had a hearing. But you would have had the opportunity of making all the arguments you've now made before the arbitrator before the board. This goes back to my question about sort of a fraud upon the board. Is there anything you've discovered post and board that went before the arbitrator that you could not have raised before the board? Well, we knew that the employer had reneged on its commitment. Okay. But you knew that. You knew that when you went before the board. You had the opportunity of making that argument in front of the board. Because that would have been critical to the board's decision. That's right. And the board, looking at the record that was made at the hearing, two members of the board said, well, we can't find a clear enough agreement only because, as the arbitrator found, the employer had reneged on its commitment. That's what he tried to describe in the file. Right. But you haven't got sort of a collateral fraud upon the court argument if all of the fraud is known at the time of the first decision. But remember, we don't apply these kinds of technical doctrines to an arbitrator's decision. This Court is not in the posture of reviewing his factual findings, his legal conclusions. It has to judge this decision. No, but we are in the position of being able to judge whether an arbitrator has contradicted another public agency that has issued a public decision. I think that it's clear from Aramark and from Virginia Mason Hospital that the issue is the remedy. In these cases, after Misko and Stead, look at the question of whether the arbitrator's remedy, what it orders the parties to do, conflicts with the public policy, that is, whether the public policy actually militates against it. You have to go back and look at Aramark, Stead, Misko. They all use that phrase. And here the arbitrator could, I think, have found, and this Court would never have been troubled, he could have found as a matter of declaratory relief, I've looked at the situation and I think the employer reneged on a commitment, didn't act fairly, breached its duty of good faith and fair dealing, and ordered no remedy, just made that finding, because they reneged on the commitment. I don't think anyone would have a problem allowing the arbitrator to make that finding, even though the board found there was no agreement. He could say it was the employer's fault in the way they acted. The slightly more difficult question is, if the arbitrator could issue a declaratory judgment, issuing a decision saying, found the employer's conduct violates the express commitment to the union to cooperate, good faith and fair dealing, the more difficult question is, can he then award damages for it? And nothing that is before you suggests that awarding damages is specifically militated against by any public policy. But I would agree the next step could be a problem. If the arbitrator had said the hospital's conduct was so egregious, they can order the hospital to recognize union and bargain for these people, that would contravene, I think, a specific public policy, and I wouldn't be arguing here for it. And in order, I'm way over my time, but an arbitrator McKay recognized that. He said, I can't go back and order the employer to bargain. I can't, my remedies are really limited. I can't contradict the fact that the board dismissed the petition. All I can do is remedy the employer's breach of the contract when it misrepresented to the region and turned its position on its head and said there was never an agreement when as a factual matter he found, yeah, the parties did agree that the service and maintenance unit was an appropriate unit. And he found that that was the unit they agreed on. And then when the region said you've got to include the other people, they reneged and said, no, we always thought that the technical would be included, and that led to the board finding there was no appropriate unit. Okay. Thank you, counsel. We will give you a minute to respond to the medical center. Let's hear from the medical center. Good morning, and may it please the Court. I'm Christopher Scamlin, representing California Pacific Medical Center. What I want to focus on here is the central issue, which is that the Cary Supremacy Doctrine, which was the grounds for Judge Conte's ruling, is fundamentally about the division of labor, if you will, on who decides union representational issues. And what the NORB regional director did here was not simply rule on whether there were stipulations or agreements between the parties. Rather, the regional director made a classic unit determination decision. He looked at the entirety of the record of a six-day hearing. He looked at the business operations of the hospital. He looked at the extent to which employees were already collectively bargained at the hospital. He looked at which positions were of various types and union representation. And on that record as a whole, including looking at the positions of both parties, which were before him, he concluded that what SCIU had proposed in June of 2003 simply was not an appropriate unit under the board's health care rule. And that's a rule that the board has special expertise to interpret. It's a rule that was issued after notice and comment rulemaking in the 80s, and that was upheld by the Supreme Court in the 90s. And based on the administrative expertise of that agency, the regional director said that what SCIU had failed to do was to propose a unit that was sufficiently inclusive for all of its employees. But if the hospital, SCIU was claiming, well, the hospital agreed with us that this was an appropriate unit, and if both parties had agreed that it was an appropriate unit, would the regional director then have looked at it in a different light than he looked at it when he did not see an agreement? Well, you know, the board was very careful to say that, not to answer that question about what if there had been an agreement. I mean, specifically the three-member panel of the board, when they take the case up on the request for review in 2004, they say it might have made a difference. On the other hand, the regional director would still have had a problem because there was not exact agreement on who all was supposed to be in this unit, so that even as of the end of the hearing, the parties were separated by a delta of at least a dozen different job classifications that they could not agree on whether they fit on which side of the line, even assuming that SCIU's proposal was limited just to the service, properly could have been limited just to the service of maintenance employees. And the board has an independent duty, even when the parties come to it with a stipulation, to examine whether a bargaining unit is appropriate. They're more deferential to a stipulated situation. But what the board also recognized was that there was not the requisite degree of certainty or specificity from whatever the party's litigation positions had been to rise to the level of the stipulation. Arbitrator McKay recognizes this. In his decision, what the arbitrator says is, it's true there was no formal stipulation, but the arbitrator says, I can tell from reading the briefs before the NLRB that there was a stipulation. While the NLRB has full authority under its rules and regulations to police and enforce stipulations, all of the arguments that the SCIU is making today and made to arbitrator McKay are arguments that SCIU made to the board. Do you agree with Mr. Rosenfeld that the union had no ability to appeal the NLRB's decision? That's correct. So in representational cases, there was not a direct path to judicial review. So the NLRB was final, and no matter how wrong the NLRB might have been, it's done. You know, there are certainly doctrines under which people can challenge board decisions in representation cases. It's not a direct path to judicial review, and it's pretty tightly policed by this Court and others. But what I would say to that is I think that point actually supports the special primacy of the NLRB to decide these, because this is not the classic case of an employer saying, we disagree with the arbitrator's ruling on public policy grounds simply because the employer thinks the law is one thing, and the arbitrator thought the law was another thing. This Kerry Supremacy Doctrine, which the Ninth Circuit has recognized as a grounds for vacature of an arbitration award, holds that when a government agency has decided the issue, the agency that's vested with special expertise and discretion over this area, once that agency has made the decision, the arbitrator isn't free to countermand that. And, in fact, in the Haig-Berberian case, which this Court decided in 1980, which is one of the earlier cases recognizing how this can play out in vacating an arbitration award, the Court actually notes that this, you know, this isn't something that the Court could review either. The NLRB's decision on this issue is, in all but the most extraordinary circumstances, final. And that reflects a congressional determination that only certain types of NLRB decisions are reviewable. So it's not about the competencies of the Court versus the NLRB. It's about the competency of the NLRB as the primary agency to decide these issues. And, you know, that leads, and, again, what Arbitrator McKay did here was he looks at the briefs that the parties submitted to the NLRB and he says, well, this brief was disingenuous and, you know, but this is all stuff that the union pointed out. In fact, what Arbitrator McKay's award does is, when he's trying to divine what the stipulation is, he's looking at what the parties were saying in their briefs to the NLRB. So these issues were fully ventilated to the NLRB. After the regional director issues his decision, SCIU files a motion for reconsideration saying we had a stipulation, and still the board says we don't see the sort of stipulation, we don't see a stipulation that would enable us to bypass our health care rule, our substantive standard for what is an appropriate bargaining unit. And neither before Arbitrator McKay nor in this proceeding is SCIU directly arguing that the unit that they proposed to the board when they first filed their representation petition in June of 2003 was, in fact, an appropriate unit under their health care rule of the NLRB. Rather, their position is that the employer had somehow agreed to go along with something that wasn't conformant with the NLRB's rules. Well, the NLRB took a look at that and said we don't see anything here that would be sufficient to cause us to depart from our rule, which is codified in the CFR and is the board's longstanding and very definite set of what are the appropriate bargaining units in the health care industry. Kennedy. Pardon me, counsel. On another subject, if I understood you correctly, and you haven't addressed this directly, but it has been referred to by Mr. Rosenfeld. On the remand that ordered by Judge Conte on the last page of his decision, he says that it was remanded for any or violations which do not relate to the arbitrator's legally erroneous finding of the parties stipulated to an appropriate bargaining unit. What violations other than involving the appropriate bargaining unit were before the arbitrator? Well, the award does detail other actions of the medical center that the arbitrator found violated the party's rules of behavior during an organizing campaign. And these included technical violations such as a delay in posting a jointly signed reproduction of the ground rules, statements made by various supervisors and other conduct of the medical center's managers. Even though those were in the context of attempting to organize an inappropriate bargaining unit, you are conceding, if I understood you correctly, that this matter should be remanded to the arbitrator to determine damages where the issue of stipulation between the parties is not an element. We did not appeal the district court's ruling of remand. The degree to which any monetary damages are left over after the unit determination issue is taken out of the equation, I think the parties are going to have very different positions when we go back before the arbitrator on how much is left. I mean, we would take the position that since the fulcrum of this decision is that by backing out of this alleged stipulation, everyone's time had been wasted, that rationale would disappear. Kennedy, as a matter of law, the arbitrator cannot find any further damages. Our position to the arbitrator would be that there are no monetary damages assignable to the to what really to anything that happened. I think you've answered my question. The question that you stated, quite frankly, and I commend you for it, that you did not appeal the district court's order, and you did not seek to have this court remand to the district court and enter judgment for the defendant. Now, we're seeking an affirmance of the order below. I just have a couple of these may be nit points about things that were raised in the reply brief, but just in the interest of an accurate and complete answer for your honors, there's an argument that hasn't come up in oral argument today, and I doubt the court is all that attuned to it. But there's the argument that the union makes that these issues were not raised before Arbitrator McKay or that they've been waived. That's the waiver point. I don't think that Mr. Rosenfeld raised that at this point. I just wanted to clarify that our answering brief did cite in the record where we had argued this before Arbitrator McKay. That's on pages 24. Would you address the question of the statute of limitations, that is, whether your appeal is timely? Certainly. Of the cases that Mr. Rosenfeld mentioned, the one case he didn't mention was Millman's, which is when the Ninth Circuit. I actually looked at the issue of when a – that was a ripeness case, so the issue was when the award was ripe for review. But, you know, you put it through the prism. It's the same concept we have here. And what that case said is that typically the – you don't have a final award until you have a final award. And, I mean, the dictionary plain meaning of the word final is it's the last one. And here we didn't have the last award from Arbitrator McKay until April 2006. Have you read the cases that Mr. Rosenfeld cited during his opening? You know, right, I have. And in those cases, did the Supreme Court accept jurisdiction over a challenge to an arbitrator's award before there was a dollar amount? In reinstatement with back pay cases, yes. And as we pointed out in our brief, that actually falls with an exception that Millman's recognizes, that your typical rote computation of back pay case is – that's ripe enough. And, frankly, in terms of actual labor practice, it's very rare for the parties to have to go back to the arbitrator. Once you get a reinstatement with back pay orders, the parties can usually sit down and figure out what the amount due is, you know, absent some issue about mitigation or if you have a very long period of unemployment. In a contract damages case such as this, though, it's quite common actually to have to go to a second step because the arbitrator will say, well, I think the employer committed these violations. Now the parties have to figure out how much it's cost them. Here, of course, we had Arbitrator McKay specifically say, I'm still here. I'm retaining jurisdiction over this. The parties are welcome to try to resolve this on their own. But if not, they can come back to me. And come back to him they did in the course of the full day. There was a – there was an evidentiary hearing before Arbitrator McKay. It was a 12-page decision. And what Arbitrator McKay does on that third day of hearing in the remedy phase is he doesn't simply add or subtract. It's not arithmetic. It's not even calculus. He performs actual judicial balancing. So he looks and he says, well, the union is asking for reimbursement of the cost of their regular field representative at the hospital, but, you know, they already have a field representative at the hospital, and I'm not going to make the hospital subsidize the union for its ongoing existing representational aspects. There were lots of other disputed issues. And, in fact, the whole reason that there had to be a third day of hearing was, depending on how advanced in the proceedings there was, there was still a delta of approximately $50,000 of difference between the parties about what was owed. So that's not the sort of thing. I mean, imagine if the first order by Arbitrator McKay had been confirmed as a judgment. You wouldn't know what to execute on it, and it would be a very complicated task for a court to enforce that. And when you finally get the final award from Arbitrator McKay, you then have a dollar amount. You have an award that, setting aside its unenforceability problems, would be specific and capable of enforcement in court. And the final piece I just wanted to address, which goes, again, to the reply brief filed by the appellant, is there's a suggestion that these cases that talk about awarding damages in lieu of specific performance or a representational order, there's a characterization of those cases in the appellant's brief that suggests, well, those are cases where a non-signatory to a contract was having damages awarded against it. If you simply look at those cases, and I have that before me, that is not, you know, that's Valley Engineers and Stevens. In fact, the signatory to the contract was having damages assessed against it. And this leads to what will be my final point. In any of these cases where the Cary Supremacy Doctrine has been applied, an arbitrator has concluded that there was some sort of violation of the contract. Otherwise, the arbitrator wouldn't be deciding the case and awarding damages. But the whole point of the Cary Supremacy Doctrine is that once the NLRB has taken up an issue and decided it, then the arbitrator simply can't step into that zone. It's the NLRB's decision. It's final. What Arbitrator McKay did here was to revisit that decision. It was improper, which is why the decision below should be affirmed. Thank you. Roberts. Thank you, Mr. Scanlon. Mr. Rosenfeld, I will offer you a minute. Rosenfeld. Judge Roth, the Labor Board has specifically held that parties may stipulate to a nonconforming unit. The case is Highlands Hospital, 327 NLRB 1049. As long as they clearly stipulate it. And if you look at the Board's decision in the record, the Board all acknowledges that that's a possibility, but they say there wasn't a clear stipulation, which is, of course, our complaint. There was no clear stipulation. The employee reneged on it. With respect to this calculation issue, Judge May, it goes back to your question about back pay. I agree sometimes back pay is simple. Sometimes it's very complicated. Does it include overtime? Does it include benefits? Did the worker mitigate? Was he eligible to work? All sorts of questions. That was what Jerry McKay left for the parties, the mathematical computation of the damages, although I will concede that it was probably more complicated in this case than in other cases, as long as it's that calculation of damages. But our footnote 1 in Millman does look like it acknowledges the back pay question computation is an exception to the finality doctrine. And it does seem to apply the finality doctrine that we typically apply in district court cases. Well, the point is I don't think you can ---- I would agree that that case referenced back pay cases, because this is unusual. I agree contract damage cases of this nature are pretty far and few between. My point only is that as long as it's a calculation of damages, as long as the arbitrator sets out what ---- Counsel, if we were to follow your recommendation, which is that we find that this appeal is out of time, that would seem to be in conflict with our decision in Millman in which we sent it back to the court before the arbitrator had made the final determination, because it was not right for decision. It was actually consistent in Millman because there the failure was of the arbitrator to even determine the remedy. What this Court said was the arbitrator wells exterior from this, what I call Millman was our case, so I'm somewhat familiar with it, was the arbitrator said there was a contract violation. I'm not going to figure out the remedy. I'm sending it back to the parties to negotiate and figure it out for themselves. Not final. Here, Arbitrator McKay said violations, I'm awarding damages, lost wages, benefits and costs and attorney's fees, those four categories. It was a ---- it was a computation in that sense. But Mr. Scanlon is right. It was going to require some testimony, just as some back pay cases do, but that's unusual. So it's really a question of whether you're going to hold a rule that says if the arbitrator awards damages, back pay or other damages, is it final, or are you going to draw a line and say the only damages that are final is back pay, because back pay encompasses lots of things. It can encompass medical expenses. It can encompass lots of things. Attorney's fees even in some cases. So ---- No. You've asked us to adopt a rule that seems to go beyond any of the cases, which is that you may not appeal it if there is ---- if it's a mathematical computation, even if it's a complicated mathematical computation. The question is ---- That would be a pretty dramatic ---- that would be an unusual extension of any of the cases that you cited, because you told me that you couldn't cite a case that had done that. All I can cite is every case that's been ---- where an employer has challenged an award to sought its vacation, the arbitrators have said, I'm remanding it to the parties because I'm holding jurisdiction or remanding it because there are issues left to resolve over how much is owed. And I think that's the line that has to be drawn, the calculation. And the final thing, if I may, is that from all our discussion, Mr. Scanlon, with my discussion, we've all ignored St. Vincent's and New York Hospital. We haven't mentioned that case. I just want to remind that in St. Vincent's, the union went to an election and lost it. Yet they went back to the arbitrator and sought damages for the employer's conduct in losing a board election where the board had certified it and said the union had lost. But this Court said if the union has challenged the employer's conduct in causing it to lose its organizing effort, that's a contractual question. That's what Jerry McKay thought he was doing, resolving a contractual question whether this employer had violated the collective bar agreement by promising not to delay the board proceedings, not to delay the representation. It's pretty hard to see the arbitrator as just doing that when he tells us that the regional director's decision was wrong and misguided. If I can phrase it slightly differently. You've got an arbitrator that used quite a bit of inflammatory language in his decision. Keep in mind that, again, the Supreme Court said an enterprise wheel and car, and this Court has said again instead, and that even if the arbitrator makes misstatements, he says wrong things, that's not grounds to set aside. And what he did was he said, and that's why I point out this Highlands case, that the parties, he thought, stipulated to an appropriate unit, which was a nonconforming service and maintenance unit, that they had agreed to that, but had to litigate whether certain people were in or out. The regional director found that that wasn't a good enough agreement, and then the union says, wait a minute, you goofed up here. We had an agreement. And then the arbitrator says, if the hospital had said to the regional director, you know what, we did have an agreement, we wouldn't be here. But they said the opposite. And he said that was bad faith and that's the contractual violation. Thank you. We thank both counsel for the argument. Our final case on the calendar this morning is Scarf v. Wells Fargo Bank.
judges: Bybee, Bea, Roth